UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAIME BRENKUS, | ) | CASE NO. 4:04CV1763 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| HEALTHY LIFE MARKETING, INC., | ) | MEMORANDUM OPINION AND ORDER |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

The above case is before the undersigned on motions for summary judgment filed by both Plaintiff Jaime Brenkus ("Plaintiff") and Defendants Healthy Life Marketing, Inc. ("Defendant HLM"), Ronald Fricke ("Defendant Fricke"), Chief Executive Officer of Defendant HLM, and Richard Herko ("Defendant Herko"), and Robert Tilton ("Defendant Tilton"), principals of Defendant HLM (collectively "Defendants"). Electronic Court Filing ("ECF") Dkt. #s 56, 57.

For the following reasons, the undersigned GRANTS Defendants' motion for summary judgment and DENIES Plaintiff's motion for summary judgment. ECF Dkt. #s 56, 57. The Court further sua sponte GRANTS summary judgment in favor of Defendant Zavarol.

**I.      FACTUAL AND PROCEDURAL HISTORY**

  **A.      THE LICENSE AGREEMENT**

On August 26, 2002, Defendant HLM and Plaintiff's company, Sound Body, Inc. ("SBI") entered into a license agreement whereby SBI granted Defendant HLM the exclusive right to manufacture, use, distribute, sell, advertise, promote and exploit a product invented and patented by Plaintiff known as the "Perfect Portion Meal Plan", which included a patent on a diet method and

1

apparatus and a partitioned food service assembly. ECF Dkt. #61 at 1-2. The agreement between the parties included a general exclusive right, license and privilege for Defendant HLM to manufacture, use, distribute, sell, advertise, promote and exploit Plaintiff's invention and it also contained a non-compete clause which provided that SBI would refrain from manufacturing, marketing or distributing any other substantially similar product, so long as Defendant HLM was not in default of any contract condition. ECF Dkt. #8, Exhibit 1.

Among other provisions, the agreement outlined the rights and obligations of each party upon breach by the other. Section 11.1, entitled "Breach", stated that:

> In the event HLM fails to timely comply with any of the terms, condition, covenants or promises of this Agreement, including but not limited to the obligations of Sections 1.4(payment of Royalties), 4.4(completion of Perfect Portion Meal Plan infomercial and rollout in a timely manner), and 5.2 (monthly reports), HLM shall be in delinquency under this Agreement.

ECF Dkt. #8, Exhibit 1. Section 11.2 provided the written notice that SBI was required to give to Defendant HLM upon delinquency, and Section 11.3 set forth the remedies of SBI upon Defendant HLM's default, which included immediate termination of the license and all rights granted by SBI and the filing of a lawsuit for damages and/or injunctive relief. *Id.* The agreement also outlined the duties of Defendant HLM upon its default, which included terminating the license to manufacture, use, distribute, sale, advertise, promote and exploit Plaintiff's products, turning over its intellectual property to SBI, conveying title to the intellectual property to SBI, turning over the tooling and other property associated with the products, conveying title to its right, title and interests in all tooling, molds, prototypes and models of the products, returning all of SBI's technology and artwork to SBI and a continuing obligation to pay royalties due SBI for sales made before termination and after sell-off. Section 11.4 of ECF Dkt. #8, Exhibit 1.

The agreement also provided that either party could terminate the agreement upon written timely notice to the other, requiring SBI to state cause within which to do so and no such

requirement for Defendant HLM. Section 11.6 of ECF Dkt. #8, Exhibit 1. The contract further stated that Defendant HLM would retain a non-exclusive license to manufacture, use distribute, sell, advertise, promote and otherwise exploit Plaintiff's products for a period of six months after termination of the agreement in order to complete orders or use all of the remaining parts it had and to sell off all of its inventory. Section 11.8 of ECF Dkt. #8, Exhibit 1.

The agreement also contained a Term and Renewal Provision which contained the following two subprovisions:

> 10.1 <u>Term</u>. The term of this License is from the Effective Date until the day, which is 18 months from the Effective Date. If HLM is not in default of any term, condition or agreement of this Agreement, HLM will have the option to extend and renew the term of this Agreement and the license granted hereunder for an additional period of one (1) years, with a second one (1) year renewal option which may be exercised, provided HLM is not in default of any term, condition or agreement of this Agreement, at the end of the first option (each hereinafter called "Renewal Term"). In the event HLM is in default of any term, condition or agreement of this Agreement, HLM shall have no right to exercise either of the options set forth herein, except as may be otherwise agreed by the parties in writing.
>
> 10.2 <u>Renewal Notice</u>. Provided HLM is not in default of any term, condition or agreement of this Agreement, the exercise of the options for the Renewal Terms shall be deemed to have automatically occurred unless HLM shall notify SBI in writing at least sixty (60) days prior to the expiration, that HLM does not wish to have this Agreement and the license granted hereunder automatically extended and renewed for a Renewal Term. If HLM elects to exercise its renewal option, the terms and conditions of this Agreement will continue to apply for the Renewal Term. HLM must have paid $100,000 in royalties during the first 52 weeks or marketing the show and its products for the agreement to automatically renew no ongoing minimums are needed once the minimums of $100,000 are met for year 1.

ECF Dkt. #8, Exhibit 1. The agreement also contained a venue clause which provided that the state courts of California would resolve all disputes arising from the agreement. Section 18.6 of ECF Dkt. #8, Exhibit 1.

3

### B.     THE CALIFORNIA CASE

On May 14, 2003, counsel on behalf of Plaintiff sent a letter to Defendant Fricke alleging that Defendant HLM had not used good faith as required by Section 4.3.2 of the agreement in developing Plaintiff and his company to a similar level and extent to that used to develop Jake Seinfeld and his "Body by Jake" products.  ECF Dkt. #59, Exhibit 3.  Section 4.3.2 of the agreement did recite that Defendant HLM would use its best efforts to develop the SBI trademarks, names and personalities to a similar extent and level to that of "Body by Jake" and Jake Seinfeld, but it further provided that "no assurances can be made that this will happen other than it will be HLM's best efforts."  ECF Dkt. #8, Exhibit 1.  Plaintiff further stated in the letter that Defendant HLM had damaged Plaintiff's relationships with retailers and advertising sources, evidenced by letters of complaint.  ECF Dkt. #59, Exhibit 3.  Plaintiff also alleged that while a provision in the contract stated that no representations or warranties were made with regard to sales volume or profit, Defendant HLM had not even made it near to the $100,000.00 in royalties that it outlined in the agreement in order automatically renew the agreement.  *Id.*  Further, Plaintiff indicated that ninety-five percent of the orders came from Plaintiff's own efforts and not those of Defendant HLM.  *Id.*

Plaintiff acknowledged the fifteen-day curative effort given to Defendant HLM upon notification of breach, but indicated that he had informed Defendant HLM on many prior occasions of issues relating to royalty payments and failure to use its best efforts to market and exploit the products.  ECF Dkt. #59, Exhibit 3.  In the conclusion of the letter, Plaintiff stated that the agreement was immediately terminated between the parties, and that, by abiding by the default and termination provisions of the contract, Plaintiff and SBI would sell Plaintiff's products without any relationship or restrictions from Defendant HLM, and Plaintiff and SBI would purchase Defendant HLM's

4

remaining inventory. *Id*.

On May 27, 2003, Defendant HLM, through counsel, responded to Plaintiff's letter in writing, rejecting the purported termination of the agreement by Plaintiff and demanding that SBI continue to honor its obligations under the agreement. ECF Dkt. #59. Defendant HLM indicated in the letter that Plaintiff had engaged in bad faith and was the most substantial barricade to Defendant HLM's marketing of the products. *Id*. Defendant HLM demanded that Plaintiff and SBI stop interfering with its performance under the agreement. *Id.*

On May 29, 2003, Plaintiff, through counsel, sent another letter to Defendant HLM's attorney, reporting that the fifteen-day right to cure period had elapsed and Defendant HLM had not attempted to cure its breaches or to even speak to Plaintiff in order to reconcile differences. ECF Dkt. #8, Exhibit 2. Plaintiff declared that as of May 29, 2003, Defendant HLM was in default under the agreement and he was therefore exercising his right to terminate the agreement, the licenses and the rights of Defendant HLM. ECF Dkt. #59, Exhibit 4.

On December 17, 2003, Defendants HLM and Fricke, filed a complaint in the Superior Court of California, San Diego County, alleging that Plaintiff and SBI breached the license agreement by improperly terminating the agreement. ECF Dkt. #59, Exhibit 5. Defendants HLM and Fricke alleged breach of contract, breach of the covenant of good faith and fair dealing, fraud in the inducement by Plaintiff, fraud in the inducement by SBI, interference with contractual and prospective economic advantage, rescission and defamation. *Id.*

On February 18, 2004, counsel for Defendants HLM and Fricke wrote a letter to Plaintiff's counsel indicating that Defendant HLM wished to exercise its option under Section 10.1 of the license agreement to renew the term of the agreement for a one-year period. ECF Dkt. #59, Exhibit 6. Defendant HLM explained that it wished to exercise this option in order to mitigate the damages

caused by SBI's breached of the license agreement and SBI's purported termination of the agreement was without legal or factual basis. *Id.*

On June 18, 2004, the San Diego Superior Court of the State of California issued a tentative ruling as to Plaintiff and SBI's notice of motion to dissolve or modify the preliminary injunction. ECF Dkt. #8, Exhibit B. That court indicated that the license agreement between the parties had terminated by its own terms on February 26, 2004 and no automatic renewal existed because of the failure to pay the $100,000.00 in royalties and revenue splits as required by the agreement. *Id*. The court further found that Defendant HLM had failed to comply with the requirement that it pay Plaintiff and SBI $100,000.00 in royalties and revenue splits within one year of the product rollout, which allowed Plaintiff and SBI to market the product to third parties. *Id*. Accordingly, the court reasoned, an injunction was not necessary since Plaintiff and SBI could market the product. *Id.*

Defendant HLM and Fricke's lawsuit went to trial in California, and on August 15, 2006, the San Diego Superior Court journalized the jury verdicts returning a verdict in favor of Defendant HLM against Plaintiff and SBI. ECF Dkt. #63, Exhibit 3. Based upon the jury verdicts, the court ordered that Plaintiff HLM recover from Plaintiff and SBI $396,960.00 for their claim of breach of contract, $422,282.00 jointly and severally for intentional misrepresentation, $409,621.00 from Plaintiff and SBI individually for punitive damages, and ten percent per annum for interest. *Id*. The special verdict forms showed that as to the breach of contract claim by Defendant HLM, the jury had found that the parties entered into a contract, Defendant HLM had performed or substantially performed all of its significant duties under the contract, which required SBI's performance, SBI failed to perform under the contract, and Defendant HLM was harmed by that failure in the amount of $396,960.00. ECF Dkt. #59, Exhibit 7. As to the intentional misrepresentation claim, the jury found the requisite elements present in order to succeed on the

claim and awarded damages in the amount of $422,282.00. *Id*. The jury further found that both Plaintiff and SBI engaged in conduct with malice, oppression or fraud and consequently, Defendant HLM should be awarded $409,621.00 against SBI and $409,621.00 against Plaintiff. *Id*. Plaintiff had also filed a counterclaim against Defendant HLM in the California case for breach of contract, but the jury found that SBI did not do all or substantially all of the significant things that the contract required and had no excuse for not performing. *Id.*

### C. THE INSTANT CASE

On August 31, 2004, well before the jury's verdicts in the California case, but after Defendant HLM had filed suit in California, Plaintiff filed the instant lawsuit. In his complaint against Defendants HLM, Fricke, Herko and Tilton, Plaintiff alleged that Defendants had infringed upon two of his patents by continuing to manufacture, sell or offer to sell his diet method and apparatus and partitioned food service assembly. ECF Dkt. #1. Plaintiff explained that he and Defendant HLM had entered into an agreement whereby he granted Defendant HLM an exclusive license to market and sell his diet method and apparatus and partitioned food service assembly. *Id.* at 3. Plaintiff postulated that he granted Defendant HLM the exclusive license from August 26, 2002 until May 29, 2003. *Id.* He sued Defendant HLM for violation of patent laws because he alleged that they continued to manufacture, sell or offer to sell his diet method and apparatus and a partitioned food service assembly beyond the May 29, 2003 termination date. *Id.* He sued Defendants Fricke, Herko and Tilton for patent infringement as well, alleging that they were never authorized to practice the inventions of the '488 patent. *Id*.

On February 9, 2005, Defendants filed an answer to the complaint. ECF Dkt. #19. Defendant HLM also filed a counterclaim against Plaintiff, alleging that Plaintiff, through his company SBI, improperly and unlawfully terminated the license agreement between the parties as it had fully performed his obligations under the license agreement. *Id.* Defendant HLM further alleged that Plaintiff had in fact breached the agreement because he had misrepresented the

7

marketing history and performance of his products prior to the instant licensing agreement and had continued to engage in the marketing and distribution of his products during the time Defendant HLM had the exclusive license in which to do so. *Id.* at 7-8. Defendant HLM also raised claims of Plaintiff's infringement of the patents for the products that he created because of the exclusive licensing agreement he had entered into with Defendant HLM. *Id.* at 8-9.

Plaintiff answered the counterclaim on March 8, 2005, and on December 15, 2005, Plaintiff filed a motion with this Court requesting the ability to add Ernie Zavarol ("Defendant Zavarol") to his complaint. ECF Dkt. #s 20, 44. The Court granted that motion. On January 9, 2006, Plaintiff filed his amended complaint which included Defendant Zavarol as a defendant. ECF Dkt. #45. On February 1, 2006, Defendants HLM, Fricke, Herko, Tilton and Zavarol answered the amended complaint and Defendant HLM repeated its counterclaim alleging breach of contract and patent infringements. ECF Dkt. #47.

On February 3, 2006, Plaintiff filed a motion to amend his amended complaint based allegedly upon further violations of his patents and intellectual property rights. ECF Dkt. #48. On February 21, 2006, Plaintiff filed an amended answer to Defendants' counterclaim. ECF Dkt. #49. On March 2, 2006, the Court granted Plaintiff's motion to amend his amended complaint.

On July 10, 2006, Plaintiff filed the instant motion for summary judgment. ECF Dkt. #56. On July 17, 2006, Defendants HLM, Fricke, Herko and Tilton filed their own motion for summary judgment. ECF Dkt. #57. Plaintiff thereafter filed a response to Defendants' summary judgment motion on August 7, 2006 and Defendants filed their response in opposition to Plaintiff's motion for summary judgment on August 10, 2006. ECF Dkt. #s 60, 61. Plaintiff filed a reply on August 23, 2006 and Defendants filed a supplemental brief in support of their motion for summary judgment on August 23, 2006. ECF Dkt. #s 62, 63. Plaintiff filed a 2006 addendum to his motion for summary judgment. ECF Dkt. #64.

## II. LAW AND ANALYSIS

### A. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(C). Summary judgment is proper when no genuine issues of fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Rule 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Allen v. Wood*, 970 F.Supp. 824, 828 (E.D.Wash.1997)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and must identify the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp., v. Catrett*, 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). This initial burden can be discharged by the moving party by showing that the nonmoving party has failed to establish an essential element of the nonmoving party's case for which he or she bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 323; *Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995). The evidence submitted must be viewed in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

If the moving party meets this burden, then the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. FED. R. CIV. P. 56(e). The nonmoving party must present additional evidence beyond the pleadings. *Id.* The nonmoving party must do this by

9

presenting more than a scintilla of evidence in support of his or her position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment must be granted unless sufficient evidence exists that favors the nonmoving party such that a judge or jury could reasonably return a verdict for that party. *Id.* at 249. The Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* If a party fails to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the Court is required to enter summary judgment. *Celotex*, 477 U.S. at 322.

### B. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF Dkt. #57)

#### 1. DEFENDANT HLM

In its motion for summary judgment, Defendant HLM contends that the key to liability for Plaintiff's patent infringement claims in the instant case rest upon whether the license agreement between Plaintiff's company SBI and Defendant HLM was improperly terminated and whether Defendant HLM's exclusive license to sell the product continued. ECF Dkt. #57 at 2. Defendant HLM asserts that the termination of the license agreement is the exact issue that they litigated in California in the jury trial, for which the jury found that Defendant HLM had performed its obligations under the contract, Plaintiff had breached the license agreement by improperly terminating it and Plaintiff made material misrepresentations upon which Defendant HLM had reasonably relied to its detriment. *Id.*

Defendant HLM argues that Plaintiff is collaterally estopped in this case from arguing that the license agreement was properly terminated on May 29, 2003 because this issue has already been litigated and decided by a jury, who determined that Defendant HLM performed under the contract and SBI failed to perform what it was required to do under the contract which caused harm to Defendant HLM. ECF Dkt. #57 at 2. Defendant HLM reasons that since Plaintiff cannot show that the license agreement was properly terminated on May 29, 2003, he cannot show patent infringement

10

of the products by Defendant HLM in selling the products after this date. *Id.*

Generally, when determining whether a state court judgment has any preclusive effect upon a subsequent action brought in federal court, "the Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal court to give the prior adjudication the same preclusive effect it would have under the law of the state whose court issued the judgment." *Heyliger v. State Univ. and Cmty. Coll. Sys. of Tennessee,* 126 F.3d 849, 851-852 (6th Cir.1997), citing *Migra v. Warren City School Dist.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984) and *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415-16, 66 L.Ed.2d 308 (1980). The statute encompasses the doctrines of collateral estoppel, or issue preclusion, and *res judicata*, or claim preclusion. *San Remo Hotel, L.P. v. City and County of San Francisco,* 545 U.S. 323, 125 S.Ct. 2491, 2500, 162 L.Ed.2d 315 (2005), citing *Allen v. McCurry*, 449 U.S. 90, 94-96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

In *Migra,* the United States Supreme Court expressed its preference for the use of the terms "issue preclusion" and "claim preclusion" to refer to the preclusive effect of a judgment in foreclosing future litigation rather than the more traditionally utilized terms "collateral estoppel" and "*res judicata*." 465 U.S. at 81. In *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, , Inc.*, 918 F.2d 658, 660-661 (6th Cir. 1990), the Sixth Circuit explained the difference between *res judicata* and collateral estoppel:

> Res judicata and collateral estoppel are not the same. Res judicata, or claim preclusion as it is more helpfully termed, is the doctrine, simply stated, by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or cause of action or raising a new defense to defeat a prior judgment. *See generally* J. Friedenthal, M. Kane & A. Miller, Civil Procedure at 607-09 (1985). It precludes not only relitigating a claim or cause of action previously*661 adjudicated, it also precludes litigating a claim or defense that should have been raised, but was not, in a claim or cause of action previously adjudicated. This last variation was formerly known as the rule against splitting a cause of action. *Id.* at 607.
>
> Collateral estoppel, or issue preclusion as it is better termed, precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action. *Id.*

11

When a federal court is asked to give preclusive effect to a state court judgment, the federal court must apply the law of the state in which the prior judgment was rendered in determining whether and to what extent the prior judgment should be given preclusive effect in a federal action. 28 U.S.C. § 1738; *Migra,* 465 U.S. at 81, 104 S.Ct. 892*; Bay Area Factors v. Calvert (In re Calvert),* 105 F.3d 315, 317 (6th Cir.1997).  In this case, California law applies as it was the State of California that rendered the state court judgment for which Defendants in the instant case seek preclusive effect.  Defendant HLM in this case argues that issue preclusion bars Plaintiff from arguing that they did not have a license after May 29, 2003 because the issue of the validity of the license agreement and Plaintiff's improper termination of that agreement on May 29, 2003 were already litigated in the California proceeding in which this Defendant and Defendant Fricke had sued Plaintiff.

Applying California law, the elements that Defendant HLM in this case must establish in order to invoke and succeed on issue preclusion are:  "(1) the issue decided in the prior case is identical with the one now presented; (2) there was a final judgment on the merits in the prior case, and (3) the party to be estopped was a party to the prior adjudication" or was in privity to the party to the prior adjudication.  *San Remo Hotel, L.P. v. San Francisco City and County*, 364 F.3d 1088, 1096 (9th Cir. 2004), citing *Stolz v. Bank of America*, 15 Cal.App.4th 217, 222, 19 Cal.Rptr.2d 19 (1993); *Bates v. Jones*, 131 F.3d 843, 857 (9th Cir. 1997).  The party to be estopped must also have had a full and fair opportunity to litigate the issues in the prior proceedings.  *Kougasian v. TMSL, Inc.*, 359 F.3d1136, 1143 (9th Cir. 2004)(citations omitted).  Courts in California may decline to apply collateral estoppel if preclusion would not serve the public interest and may work an injustice.  *Bates,* 131 F.3d at 857 (citations omitted).

Upon review of the applicable elements of issue preclusion under California law, the Court finds that Defendant HLM has met its burden of establishing that issue preclusion bars Plaintiff's patent infringement claims against them in this case.  Reviewing the first element, the

12

issue decided in the California case is indeed identical to that argued in this case as Plaintiff here argues that Defendant HLM infringed his patent rights because after May 29, 2003, the date that he believes he validly terminated the license agreement, Defendant HLM was not authorized to practice the inventions of the patents.  ECF Dkt. #45.  The critical fact upon which Plaintiff relies in this case to establish his patent infringement claims is the validity of the termination of the license agreement that he avers occurred on May 29, 2003.  In fact, in his complaint, Plaintiff concedes as much when he states in paragraph eleven of his amended complaint that "As of May 29, 2003, Defendants[sic] HLM no longer were authorized to practice the inventions of the '488 Patent.  Defendants Zavoral, Fricke, Herko and Tilton were **NEVER**  authorized to practice the inventions of the '488 Patent."  ECF Dkt. #45 ¶ 11.  Plaintiff further averred in his amended complaint that "As of May 29, 2003, Defendants[sic] HLM no longer were authorized to practice the inventions of the '058 patent.  Defendants Zavoral, Fricke, Herko and Tilton were **NEVER** authorized to practice the inventions of '058 patent." ECF Dkt. #45 ¶ 16.

The issue of valid termination of the license agreement was litigated in California as the jury found in favor of Defendant HLM on its breach of contract claim against Plaintiff.  ECF Dkt. #61, Exhibit 2.  The jury further found that Defendant HLM fulfilled or substantially fulfilled all of the conditions of the license agreement and SBI did not do all or substantially all of the significant things that the contract required it to do and had no excuse for not performing.  *Id.*  Without the ability to establish that he properly terminated the license agreement in which he gave Defendant HLM exclusive licenses and rights to his products, Plaintiff cannot establish that Defendant HLM infringed upon his patent rights.

Second, the court in California did issue a final judgment in that case.  Although Plaintiff argues to the contrary in his own motion for summary judgment, the court issued its judgment entry journalizing the jury verdicts on August 15, 2006 finding that Plaintiff and SBI breached the license agreement with Defendant HLM and caused $396,960.00 in damages from the breach;

13

Plaintiff and SBI made intentional misrepresentations which harmed Defendants HLM and Fricke and caused damage in the amount $422,822.00 and Plaintiff and SBI each acted maliciously, oppressively, or fraudulently such that punitive damages were awarded against each in the amount of $409,621.00. ECF Dkt. #63. Moreover, while Plaintiff did file a motion to vacate and enter a different judgment and a motion for a new trial based upon irregularity in the proceedings, abuse of discretion by the court, misconduct of the jury, accident or surprise, newly discovered evidence, excessive damages, insufficiency of the evidence, the verdict is contrary to law and error in law, the court denied that motion on October 13, 2006, finding that the evidence was not insufficient and not finding that the jury clearly should have reached a different verdict. Superior Court of California, County of San Diego, Case Number GIC822927, October 13, 2006 Denial of Motion to Vacate and Enter a Different Judgment and Motion for New Trial.

And finally, Plaintiff, the party in this case, was a party to the prior adjudication. Defendants HLM and Fricke filed suit in California against both SBI and Plaintiff. ECF Dkt. #63, Exhibit 1. Moreover, the Court finds that Plaintiff was given a full and fair opportunity to litigate the issue at trial in California and there is no injustice or disservice to public interest by applying issue preclusion in the instant case.

Since Defendant HLM has established all of the elements of issue preclusion under California law, the Court GRANTS their motion for summary judgment and finds that Plaintiff's claims of patent infringement are barred by the doctrine of issue preclusion in this case. ECF Dkt. #57. Without the ability to establish the existence of a valid termination of the license agreement in which Defendant HLM had exclusive rights to the patents, Plaintiff cannot establish that Defendant HLM infringed on his patent rights.

### 2. DEFENDANTS FRICKE, HERKO AND TILTON

Defendants Fricke, Herko and Tilton also move for summary judgment for the same reasons as those advanced by Defendant HLM. ECF Dkt. #57. They assert that while Plaintiff

named them individually in his lawsuit in this case, he did not allege that they acted beyond the scope of their authority as principals of Defendant HLM in selling the product and the Court should therefore dismiss the claims against them for the same reasons as argued by Defendant HLM.

Defendant Fricke is the CEO of Defendant HLM and Defendants Herko and Tilton are principals of Defendant HLM.  ECF Dkt. #57 at 1.  In his complaint, the only reference that Plaintiff makes to these Defendants is that they were never authorized to "practice the inventions of the '488 Patent." or the '053 patent.  ECF Dkt. #45 ¶ 11; ECF Dkt. #45 ¶ 16.  35 U.S.C. § 271(a) provides that "[w]hoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent." In *Manville Sales Corp. v. Paramount Systems, Inc.,* the Federal Circuit Court held that "[f]or officers of [a corporation] ··· to be personally liable for [their company's patent] infringement [,] ··· there must be evidence to justify piercing the corporate veil." 917 F.2d 544, 552 (Fed.Cir.1990).  However, if the corporate officers *induce* infringement by actively aiding and abetting their corporation's infringement, the officers can be held liable under 35 U.S.C. § 271(b) regardless of whether the corporation is the alter ego of the corporate officer.  *Sadler-Cisar, Inc. v. Commercial Sales Network, Inc.* 786 F.Supp. 1287, 1300 -1301 (N.D.Ohio 1991).  Thus, in *direct* infringement claims, the corporate veil must be pierced; but in inducement of patent infringement cases, the corporate veil need not be pierced to hold a corporate officer personally liable.  *Gubb v. P&M Services, Inc.*, Nos. 04-72432, 05-71576, 2006 WL 2559794 at *5 (E.D.Mich. 2006), citing *Hoover Group, Inc. v. Custom Metal Craft, Inc.,* 84 F.3d 1408, 1412 (Fed.Cir.1996).

In the instant case, Plaintiff provides little detail with regard to his claims against Defendants Fricke, Herko, and Tilton beyond averring that they were never authorized to "practice the inventions" of his patents.  Plaintiff essentially lumps his claims against these Defendants with those against Defendant HLM.  Plaintiff's claims against these individuals suffer

15

the same fate as his claims against Defendant HLM as the main issue again is the validity of his termination of the license agreement with Defendant HLM. The jury in California found that Plaintiff had breached the license agreement and improperly terminated the agreement on May 29, 2003. The jury further found that Defendant HLM had performed or substantially performed all of its duties under the license agreement.

Accordingly, with a determination that a valid termination of the license agreement by Plaintiff did not occur on May 29, 2003, and a finding that Defendant HLM had performed or substantially performed under the license agreement and Plaintiff had breached the license agreement, claims that any Defendant committed patent infringement as to Plaintiff's patents cannot be supported as no evidence exists establishing that Defendant HLM's exclusive licenses and rights to the products were validly terminated which would raise an issue of patent infringement so that as the product's marketing would have reverted to Plaintiff. Moreover, even if Plaintiff could get past issue preclusion, he fails to bring forth evidence justifying a piercing of the corporate veil and the support that he needs in order to establish that Defendants Fricke, Herko and Tilton aided and abetted patent infringement is otherwise insufficient.

For these reasons, the Court GRANTS Defendants Fricke, Herko and Tilton's motion for summary judgment. ECF Dkt. #57.

### C. DEFENDANT ZAVAROL

Although Defendant Zavarol did not file a response in opposition to Plaintiff's motion for summary judgment and did not file his own motion for summary judgment, the Court *sua sponte* GRANTS summary judgment in Defendant Zavarol's favor. The Court realizes that "a district court does not have sweeping authority to enter summary judgment at any time, without notice, against any party." *Doyle v. City of Columbus,* 120 Fed. Appx. 560, 564-565 (6th Cir. 2004), quoting *Employers Ins. of Wausau v. Petroleum Specialties, Inc.,* 69 F.3d 98, 105 (6th Cir. 1995). "[B]efore summary judgment may be granted against a party, Fed.R.Civ.P. 56(c) mandates that

16

the party opposing summary judgment be afforded [ten days] notice and a reasonable opportunity to respond to all issues to be considered by the court." *Doyle,* 120 Fed. Appx. at 565, quoting *Routman v. Automatic Data Processing, Inc.,* 873 F.2d 970, 971 (6th Cir.1989). When a court fails to abide by the notice requirement, the court is deprived "of authority to grant summary judgment, unless the opposing party has waived this requirement, or there has been no prejudice to the opposing party by the court's failure to comply with this provision of the rule." *Doyle,* 120 Fed. Appx. at 565, quoting *American Road Serv. Co. v. Consol. Rail Corp.,* 348 F.3d 565, 567 (6th Cir. 2003)(quotations and citations omitted). The Court may *sua sponte* grant summary judgment "so long as the losing party was on notice that it had to come forward with all of its evidence [and had a] reasonable opportunity to respond to all the issues to be considered by the court." *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005), quoting *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000).

Here, while Defendant Zavarol did not move for summary judgment as the other Defendants have, the Court finds that Plaintiff is not prejudiced by the *sua sponte* granting of summary judgment in favor of Defendant Zavarol because issue preclusion bars Plaintiff's patent infringement claims against Defendant Zavarol in the exact same way that it does against the other Defendants in this case. The validity of Plaintiff's alleged termination of the license agreement between Plaintiff and Defendant HLM was determined by the California jury and the jury found that Defendant HLM had performed or substantially performed under the license agreement and Plaintiff had breached the license agreement. Hence, the jury found that Plaintiff had breached the license agreement as averred by Defendants HLM and Fricke in their complaint, in which they asserted that Plaintiff had improperly terminated the license agreement on May 29, 2003 and Plaintiff had engaged in the distribution and sale of the product without Defendant HLM's consent. With a finding that Plaintiff improperly terminated the license agreement by

17

Plaintiff and had in fact breached the agreement, and a finding that Defendant HLM had performed or substantially performed under the license agreement, claims that any Defendant committed patent infringement cannot be supported as no evidence exists establishing that Defendant HLM's exclusive licenses and rights to the products were validly terminated which would then raise an issue of patent infringement as the products and their marketing would have reverted to Plaintiff.

For these reasons, the Court *sua sponte* GRANTS summary judgment in Defendant Zavarol's favor on Plaintiff's amended complaint.

### D. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF Dkt. #56)

Plaintiff also filed his own motion for summary judgment in this case.  ECF Dkt. #56. Plaintiff explains in his motion that Defendants have no legal rights to the patents as he stipulates that while Defendants had distribution rights to the product from August 26, 2002 to May 29, 2003 with a six-month sell-off period to liquidate remaining inventory, they continued to sell his product illegally as of July 7, 2006 without any sales records or royalties.  *Id.* at 2.  Plaintiff asserts that he seeks "damages from Defendants for Patent Infringement, Trade Dress, Intellectual Property Infringement, and Trademark and Copyright Infringement."  *Id.*

Again, because Plaintiff cannot establish that a valid termination of the license agreement occurred or that he had again retained the patent rights to the products that were within the exclusive licenses and rights of Defendant HLM, the Court DENIES Plaintiff's motion for summary judgment.  ECF Dkt. #56.  Moreover, Plaintiff only sued Defendants in this case for Patent Infringement, so the only context in which this Court reviews his amended complaint is for patent infringement and not trade dress, intellectual property infringement or trademark and copyright infringement.

18

**III.** **CONCLUSION**

For the foregoing reasons, the undersigned GRANTS Defendant HLM's motion for summary judgment (ECF Dkt. #57), GRANTS Defendant Fricke, Herko and Tilton's motion for summary judgment (ECF Dkt. #57), *sua sponte* GRANTS summary judgment in favor of Defendant Zavarol, DENIES Plaintiff's motion for summary judgment (ECF Dkt. #56), and DISMISSES Plaintiff's amended complaint with prejudice at his cost.

IT IS SO ORDERED.


Dated: January 5, 2007

*/s/George J. Limbert*
GEORGE J. LIMBERT
U.S. MAGISTRATE JUDGE